**JANOVE PLLC**
Raphael Janove (CA Bar No. 361193)
500 7th Ave., 8th Fl.
New York, NY 10018
(646) 347-3940
raphael@janove.law

*Attorney for Plaintiffs and the Proposed Classes*

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **Janine Nadal** and **Emalie Favela,** on behalf of themselves and all others similarly situated,<br><br>      Plaintiffs,<br><br>   v.<br><br>**Manly Bands LLC**,<br><br>      Defendant. | Case No. **'25 CV 3133 CAB BJW**<br><br>**COMPLAINT**<br><br>**CLASS ACTION**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiffs Janine Nadal and Emalie Favela, on behalf of themselves and all others similarly situated, on knowledge as to their own actions, the investigation of Plaintiffs' counsel, and otherwise upon information and belief, allege against Defendant Manly Bands LLC ("Defendant" or "Manly Bands") as follows:

### PRELIMINARY STATEMENT

1.     This is a class action lawsuit against Manly Bands, which sells wedding bands and jewelry products on its website, https://manlybands.com/. The website has reviews from over 27,000 customers. It made approximately $28 million in revenue from website sales in 2024 alone.

2.     Manly Bands consistently advertises massive discounts for its

products. In truth, its products are always on "sale" and never sold at the original reference prices.

3. Manly Bands also pretends to have seasonal or limited time sales, like a "Black Friday Sale," "Labor Day Sale," "Customer Appreciation," "Prime Day Sale," or "Spring Sale." However, the products are always on sale, and the so-called "deal" never ends. It often uses fake countdown timers on its website to further create the illusion that any sales or deals are about to end.

4. Through this false and deceptive marketing, advertising, and pricing scheme, Defendant has violated Utah consumer protection law, which applies to Plaintiffs and the proposed Nationwide Class (defined below). It also has violated California law, which expressly prohibits falsely advertising goods on "sale" from fictitious former prices, and which applies to Plaintiffs and the proposed California Class (defined below).

5. Plaintiffs, on behalf of themselves and on behalf of all others similarly situated, hereby seek actual and statutory damages, restitution, injunctive relief, punitive damages, attorneys' fees, and all other relief which the Court may deem appropriate.

## JURISDICTION

6. This Court has jurisdiction over this action under the Class Action Fairness Act of 2005. Pursuant to 28 U.S.C. § 1332(d)(2), this Court has original jurisdiction because the aggregate claims of the putative class members exceed $5 million, exclusive of interest and costs, and Plaintiffs and at least one of the members of the proposed classes are citizens of a different state than Defendant.

7. This Court has personal jurisdiction over Defendant because it conducts substantial business in this District, and a substantial part of the acts and omissions complained of occurred in this District.

## VENUE

8. Venue is proper in this District under 28 U.S.C. § 1391(b)(2), in

that a substantial part of the events or omissions giving rise to the claim occurred in this District.

## PARTIES

9.      Plaintiff Janine Nadal is domiciled in California and resides in San Diego. On September 11, 2025, she purchased "The Lunar" wedding band from Defendant's website, which was falsely advertised as being offered at a discount during a limited time sale. Plaintiff reasonably relied on Defendant's false advertisements and would not have purchased the item or would have paid less for the item had she known about the deceptive advertising, which she reasonably relied upon in making her purchase.

10.     Plaintiff Emalie Favela moved to Texas in October 2025, but she was previously domiciled in California. On January 15, 2025, while she was still domiciled in California, she purchased "The Baller" wedding band from Defendant's website, which was falsely advertised as being offered at a discount during a limited time sale. Plaintiff reasonably relied on Defendant's false advertisements and would not have purchased the item or had paid less for the item had she known about the deceptive advertising, which she reasonably relied upon in making her purchase.

11.      Defendant Manly Bands LLC is a Utah corporation that is headquartered in Vineyard, Utah.

## FACTS

12.     Defendant Manly Bands sells wedding bands and jewelry (the "Products") on its website www.manlybands.com.

13.     Manly Bands has engaged in persistent false discounting and false claims of limited-time sales of its Products since at least 2001.

14.     Defendant routinely advertises discounts of 20% to 40% (or even more), which are often promoted as "limited time," "flash," or "holiday sales."

15.     Defendant also frequently uses countdown timers on its website, suggesting that the offers are about to expire.

16.     However, these "sales" do not end; they are perpetual, and are, therefore, not "sales." These purported "sales" appear to run continuously under changing promotional labels, creating the false impression of scarcity and urgency.

17.     The "sales" just change their name, such as "Labor Day Sale," "Customer Appreciation," "Prime Day Sale," or "Spring Sale."

18.     And the website's banners and marketing copy consistently emphasize urgency such as "Limited Time Only," "Final Hours," and "Flash Sale."

19.     For example, on October 23, 2025, Manly Bands ran a "Customer Appreciation" sale, offering 35% off sitewide discounts supposedly for a "limited time only." It also displayed a countdown timer on the top of the website suggesting that the sale was about to end.



20.     Yet, as of November 12, 2025, Manly Bands offered at least a 35% discount on all its Products under a "Black Friday Sale.":





21.    These sitewide sales are perpetual. To illustrate, on August 1, 2025, Manly Bands offered "30% off sitewide," for a "LIMITED TIME ONLY." On June 12, 2025, it offered "30% off sitewide" as a "Limited Time offer!"

22.    On April 20, 2025, it had "UP TO 40% OFF" in a "Black is the New Black Sale!", which also advertised was as a "Limited time offer!" On February 11, 2025, Defendant stated "Celebrate Presidents Day with our 30% off sale."

23.    On December 7, 2024, it was "30% Off All Rings" and a "LIMITED TIME OFFER" for the "HOHOHOLIDAY RINGING" sale. On June 9, 2024, it was a "Labor Day Sale" of "30% Off Sitewide." On March 9, 2024, it was the same sale of 30% off, but called "Wedding Season Sale."

24.    Defendant's pervasive false claims of limited time sales of at least 20% or higher date back to 2021.

25.    Defendant uses pervasive "strike through" pricing, where the supposed original reference price is shown but struck through. To illustrate, "The Lunar" ring, which Plaintiff Nadal purchased believing she was receiving a limited-time discount, has consistently been advertised with a strike-through price of $700 during a sitewide sale.

26.  For instance, on June 29, 2025, the website shows "The Lunar" with a $700 strikethrough price during a "35% off sitewide" sale, for a "LIMITED TIME ONLY!" and a false countdown timer[1]:



27.  As of November 12, 2025, "The Lunar" also had a $700 strike through price per a "35% off" "Black Friday Sale":



28.  As a further example, "The Baller" ring, which Plaintiff Favela purchased believing she was receiving a limited-time discount, has been consistently advertised with a strikethrough price and being on a limited time sale.

---

[1]https://web.archive.org/web/20250629015139/https://manlybands.com/products/the-lunar

29.    On December 12, 2024, it was advertised with a strikethrough price of $260 during a sitewide 30% sale that was supposedly only available for a "LIMITED TIME"[2]:



30.    As of November 12, 2025, it was advertised with a strikethrough price of $285 during a 35% sitewide Black Friday sale:



31.    Defendant employs false reference pricing schemes to increase sales, knowing that such prices influence purchasing decisions, as consumers are drawn to perceived bargains. Fake discounting and false reference prices are widely recognized as powerful tools in convincing customers to make purchases, with higher reference prices leading to higher selling prices.[3]

---

[2] https://web.archive.org/web/20241209091114/https://manlybands.com/products/the-baller

[3] *See, e.g.*, Richard Staelin, Joel E. Urbany, and Donald Ngwe, *Competition and the Regulation of Fictitious Pricing*, 1-21 Journal of Marketing (2023); Armstrong, Mark and Yongmin Chen (2019), "Discount Pricing," Economic Inquiry, 58 (4), 1614–27.

32.    As one research study from the Harvard Business School summarized:

> Taken together, evidence from our analysis of observational transaction data and our laboratory experiment suggests that fake prices provide sellers with a powerful tool to enhance demand, but one that may come at the expense of misleading consumers about products' true initial selling prices. Consumers take initial prices as signals of product quality and rate offers as being better deals the higher these initial prices are with respect to present selling prices. Accordingly, fake prices have the highest influence on purchase likelihood for less-informed consumers.
>
> . . .
>
> By definition, a fake price offers a fake discount—a discount that does not represent a decrease from some previous selling price but, rather, the difference between the current selling price and a fake introductory price. There is much existing literature on the impact of discounts on consumer behavior . . .[4]

33.    As further illustrated by the FTC in its report, *Bringing Dark Patterns to Light*, claims of false discounts and the use of a "Baseless Countdown Timer" creates an illusion of limited-time sales, putting undue pressure on individuals to buy immediately.[5]

34.    On information and belief, Defendant makes most of its sales directly from www.manlybands.com, where it sells the products at a false discount.

35.    Defendant's marketing directs consumers to its website—not to third-party sellers—to make these purchases.

---

[4] Donald Ngwe, *Fake Discounts Drive Real Revenues in Retail,* Harvard Business School Working Paper (2018), available at https://www.hbs.edu/ris/Publication%20Files/18-113_16977967-84c0-488d-96e5-ffba637617d9.pdf.

[5] https://www.ftc.gov/system/files/ftc_gov/pdf/P214800%20Dark%20Patterns%20Report%209.14.2022%20-%20FINAL.pdf

36.     To the extent any third-party sales have occurred, those are not the prevailing market prices. For instance, although it appears that Amazon has at least listed for sale the Products as available from third-party sellers, Amazon does not offer the Products for purchase at the original reference prices that Defendant posts on its website.

37.     Defendant's misconduct has therefore artificially increased demand for its Products and has manipulated consumers like Plaintiffs and the class members to pay a price premium for Defendant's Products.

## CLASS ALLEGATIONS

38.     Plaintiffs bring this action pursuant to Fed. R. Civ. P. 23(a), (b)(2), and (b)(3), on behalf of themselves and the following proposed "Nationwide Class":

> All persons in the United States, within the applicable statute of limitations, who purchased Products from Defendant that were advertised with a discount.

39.     Plaintiffs also bring this action on behalf of themselves and on behalf of the following class (the "California Class"):

> All persons in California, within the applicable statute of limitations, who purchased Products from Defendant that were advertised with a discount.

40.     Excluded from the proposed Classes are Defendant and its employees, officers, directors, legal representatives, heirs, successors, subsidiaries, and affiliates, and the judicial officers and their immediate family members and associated court staff assigned to this case, as well as all persons who make a timely election to be excluded from the proposed class.

41.     Certification of Plaintiffs' claims for class-wide treatment is appropriate because Plaintiffs can prove the elements of their claims on a class-wide basis using the same evidence they would use to prove those elements in individual actions alleging the same claims.

42.     This action meets all applicable standards of Fed. R. Civ. P. 23 for

class certification, in that Plaintiffs can demonstrate the elements delineated below.

43.    <u>Numerosity</u>. The members of the proposed Classes are so numerous and geographically dispersed that individual joinder of all proposed class members is impracticable. *See* Fed. R. Civ. P. 23(a)(1). While Plaintiffs believe that there are hundreds of thousands of members of the proposed Classes, the precise number of class members is unknown, but may be ascertained from Defendant's books and records.

44.    <u>Ascertainability</u>. The Classes are ascertainable because their members can be readily identified using business records, and other information kept by Defendant in the usual course of business and within its control or by Plaintiffs and the class members themselves. Plaintiffs anticipate providing appropriate notice to the Classes to be approved by the Court after class certification, or pursuant to court order.

45.    <u>Commonality and Predominance.</u> This action involves common questions of law and fact, which predominate over any questions affecting individual class members. *See* Fed. R. Civ. P. 23(a)(2) and (b)(3). These include, without limitation:

46.    Whether Defendant engaged in the conduct alleged in this Complaint;

A.    Whether Defendant engaged in the conduct alleged in this Complaint;

B.    Whether Defendant violated the applicable statutes alleged herein;

C.    Whether Defendant's conduct emanated from the State of California;

D.    Whether Plaintiffs and the class members are injured and harmed directly by Defendant's conduct;

E.    Whether Plaintiffs and the class members are entitled to damages due to Defendant's conduct as alleged in this Complaint, and if so,

in what amounts; and

F.      Whether Plaintiffs and the class members are entitled to equitable relief, including, but not limited to, restitution or injunctive relief as requested in this Complaint.

47.    Typicality. Plaintiffs' claims are typical of the putative class members' claims because, among other things, all such class members were comparably injured by Defendant's wrongful conduct as described above. *See* Fed. R. Civ. P. 23(a)(3). Defendant's creation and display of its misleading advertisements is uniform for all Plaintiffs and class members.

48.    Adequacy. Plaintiffs are adequate proposed class representatives because their interests do not conflict with the interests of the other members of the proposed Classes they seek to represent; because she has retained counsel competent and experienced in complex class action litigation; and because she intends to prosecute this action vigorously. The interests of the proposed Classes will be fairly and adequately protected by Plaintiffs and their counsel. *See* Fed. R. Civ. P. 23(a)(4).

49.    Declaratory and Injunctive Relief. Defendant has acted or refused to act on grounds generally applicable to Plaintiffs and the other members of the proposed Classes, thereby making appropriate final injunctive relief and declaratory relief, as described below, with respect to the proposed Classes as a whole. *See* Fed. R. Civ. P. 23(b)(2).

50.    Superiority. A class is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action. The damages or other financial detriment suffered by Plaintiffs and putative class members are relatively small compared to the burden and expense that would be required to individually litigate their claims against Defendant, so it would be impracticable for members of the proposed Classes to individually seek redress for Defendant's wrongful conduct.

51.    Applying the principles of equity or balance of equities, expecting

an individual plaintiff who is at a disadvantage with limited resources and spending capacity, and with minimal negotiating power, if any, to litigate claims against Defendant, a corporation that has significant resources and deep pockets, would be unfair. Class actions are a necessary and essential means to provide for public interest litigations with checks and balances to curtail deceptive practices by powerful private corporations, including Defendant.

52. There is no special interest in class members individually controlling the prosecution of separate actions. And even if class members could afford individual litigation, the court system could not. Individualized litigation creates a potential for inconsistent or contradictory judgments, and it increases the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court. *See* Fed. R. Civ. P. 23(b)(3).

**FIRST CLAIM FOR RELIEF**
**Violation of the Utah Consumer Sales Practices Act**
**Utah Code §§ 13-11-1 *et seq.***
**(By Plaintiffs, individually and on behalf of the Nationwide Class)**

53. Plaintiffs incorporate by reference all allegations in this Complaint and restate them as if fully set forth herein.

54. Defendant's conduct alleged above constitutes deceptive acts or practices in connection with a consumer transaction under the Utah Consumer Sales Practices Act ("CSPA"), Utah Code §§ 13–11–1 *et seq.*

55. The CSPA applies to Plaintiffs and the Nationwide Class because the State of Utah has an interest in regulating business conduct in Utah. Defendant is a Utah corporation, headquartered in Utah, its executives and employees are in Utah, and Defendant's false and deceptive pricing scheme emanated from Utah. In addition, Defendant's terms of use for its website—of which Plaintiffs did not have notice nor

assent to—are governed by Utah law, "without regard to its conflict of law provisions," indicating Defendant's intent that sales through its website be governed by Utah law.

56.    Defendant's violation of the FTC Act violates the CSPA, as the latter is expressly intended "to make state regulation of consumer sales practices not inconsistent with the policies of the Federal Trade Commission Act relating to consumer protection," Utah Code §§ 13-11-2(4). The Federal Trade Commission Act prohibits "unfair or deceptive acts or practices in or affecting commerce" (15 U.S.C. § 45(a)(1)) and specifically prohibits false advertisements. 15 U.S.C. § 52(a); 16 C.F.R.§ 233.1

57.    Defendant, throughout its pervasive false and deceptive marketing, also violated the CSPA in other ways, including but not limited to, "(a) indicat[ing] that the subject of a consumer transaction has sponsorship, approval, performance characteristics, accessories, uses, or benefits, if the subject has not; (b) indicat[ing] that the subject of a consumer transaction is of a particular standard, quality, grade, style, or model, if the subject is not; . . . (d) indicat[ing] that the subject of a consumer transaction is available to the consumer for a reason that does not exist . . . (e) indicat[ing] that the subject of a consumer transaction has been supplied in accordance with a previous representation, if the subject has not; . . . [and] (h) indicat[ing] that a specific price advantage exists, if the specific price advantage does not." Utah Code § 13-11-4.

58.    Defendant also violated Utah Code § 13–11–5 because its pervasive false and deceptive marketing was an unconscionable act and practice.

59.    Plaintiffs and the Nationwide Class are therefore entitled to recover $2,000 in statutory fines (for all those who purchased on or before May 7, 2025), or actual damages as compensation for their losses pursuant to Utah Code §§ 13–11–19(2) & (4).

60.    Finally, Plaintiffs and the Nationwide Class are entitled to an

award of attorneys' fees under Utah Code § 13-11-19(5).

61.    Plaintiffs and the class members also lack an adequate remedy at law for future harm and therefore are further entitled to a declaratory judgment that Defendant's acts and practices described herein violate the CSPA pursuant to Utah Code §§ 13–11–19(1)(a) & (3). Otherwise, Plaintiffs, the class members, and members of the general public may be irreparably harmed and/or denied an effective and complete remedy if such an order is not granted.

## SECOND CLAIM FOR RELIEF
### Violation of California's Unfair Competition Law ("UCL")
### Cal. Business & Professional Code § 17200 *et seq.*
### (By Plaintiffs, individually and on behalf of the California Class)

62.    Plaintiffs incorporate by reference all allegations in this Complaint and restate them as if fully set forth herein.

63.    The UCL defines unfair business competition to include any "unlawful, unfair or fraudulent" act or practice, as well as any "unfair, deceptive, untrue or misleading" advertising. Cal. Bus. & Prof. Code § 17200.

64.    A business act or practice is "unlawful" under the UCL if it violates any other law or regulation.

65.    A business act or practice is "unfair" under the UCL if the reasons, justifications, and motives of the alleged wrongdoer are outweighed by the gravity of the harm to the alleged victims.

66.    A business act or practice is "fraudulent" under the UCL if it is likely to deceive members of the consuming public.

67.    Defendant has violated the "unlawful" prong under the UCL and has engaged in "unfair, deceptive, untrue or misleading" advertising.

68.    The Federal Trade Commission Act prohibits "unfair or deceptive acts or practices in or affecting commerce" (15 U.S.C. § 45(a)(1)) and specifically prohibits false advertisements. 15 U.S.C. § 52(a). Defendant's use of fake discounts

to sell its Products are deceptive practices that violate the FTC Act and federal regulations.

69.    16 C.F.R.§ 233.1 states:

(a) One of the most commonly used forms of bargain advertising is to offer a reduction from the advertiser's own former price for an article. If the former price is the actual, bona fide price at which the article was offered to the public on a regular basis for a reasonably substantial period of time, it provides a legitimate basis for the advertising of a price comparison. Where the former price is genuine, the bargain being advertised is a true one. If, on the other hand, the former price being advertised is not bona fide but fictitious—for example, where an artificial, inflated price was established for the purpose of enabling the subsequent offer of a large reduction—the "bargain" being advertised is a false one; the purchaser is not receiving the unusual value he expects. In such a case, the "reduced" price is, in reality, probably just the seller's regular price.

(b) A former price is not necessarily fictitious merely because no sales at the advertised price were made. The advertiser should be especially careful, however, in such a case, that the price is one at which the product was openly and actively offered for sale, for a reasonably substantial period of time, in the recent, regular course of his business, honestly and in good faith—and, of course, not for the purpose of establishing a fictitious higher price on which a deceptive comparison might be based. And the advertiser should scrupulously avoid any implication that a former price is a selling, not an asking price (for example, by use of such language as, "Formerly sold at $_____"), unless substantial sales at that price were actually made.

70.    California law also prohibits false former pricing schemes. Cal. Bus. & Prof. Code § 17501, entitled "Value determinations; Former price advertisements," states:

For the purpose of this article the worth or value of any thing advertised is the prevailing market price, wholesale if the offer is at wholesale, retail if the offer is at retail, at the

time of publication of such advertisement in the locality wherein the advertisement is published.

No price shall be advertised as a former price of any advertised thing, unless the alleged former price was the prevailing market price as above defined within three months next immediately preceding the publication of the advertisement or unless the date when the alleged former price did prevail is clearly, exactly and conspicuously stated in the advertisement.

71.     As further detailed in the Third Claim for Relief below, California's False Advertising Law also prohibits a business from "[a]dvertising goods or services with intent not to sell them as advertised," Cal. Civ. Code § 1770(a)(9), and prohibits a business from "[m]aking false or misleading statements of fact concerning reasons for, existence of, or amounts of price reductions." *Id.* § (a)(13)

72.     Defendant's false advertising scheme as alleged herein violates the unlawful prongs of the UCL since they violate 16 C.F.R. § 233.1, Cal. Bus. & Prof. Code § 17501, Cal. Civ. Code §§ 1770(a)(9) and (a)(13).

73.     Defendant has also violated the "unfair" prong of the UCL by falsely representing that its consumers received a discount from a referenced "original" former price of its Products.

74.     Additionally, Defendant has violated the "unfair" prong of the UCL by falsely representing that its Products were offered on unique, time-sensitive discounts when, in fact, the time limits, displayed by a countdown timer, did not exist.

75.     These acts and practices are unfair because they were likely to cause consumers to falsely believe that Defendant was offering value, discounts, or bargains from the prevailing market value or worth of the products sold that do not, in fact, exist.

76.     As a result, purchasers (including Plaintiffs) reasonably understood that they were receiving valuable price reductions on their purchases.

This, in turn, has induced reasonable purchasers to buy Defendant's products that they would not have otherwise purchased or to pay more than if they had known about the false advertising.

77.    The gravity of the harm to Plaintiffs and members of the Classes resulting from these unfair acts and practices outweighs any conceivable reasons, justifications, or motives that Defendant may have had for engaging in such deceptive acts and practices.

78.    Additionally, Defendant has violated the "fraudulent" prong of the UCL because its marketing and advertising materials included false "original" prices and because these same materials also suggested that the offers in the False Sale Packs were unique, limited, and would no longer be available at those price points following the conclusion of its sale events.

79.    Defendant's acts and practices deceived Plaintiffs and the Classes at large. Specifically, Plaintiffs and the Classes relied on these misleading and deceptive representations regarding limited-time sales and discounts.

80.    Plaintiffs and the Classes never received the benefit of their bargains with Defendant because they did not receive any actual discount, contra Defendant's misrepresentations. Plaintiffs and Class members did not receive Products that were worth the inflated amount that Defendant represented to them as the original reference prices; the Products did not regularly sell for, and were not actually worth, the fictitious reference prices advertised by Defendant.

81.    As a result of these violations under each of the fraudulent, unfair, and unlawful prongs of the UCL, Defendant has been unjustly enriched at the expense of Plaintiffs and members of the proposed Classes. Specifically, Defendant has been unjustly enriched by obtaining revenues and profits that it would not otherwise have obtained absent its false, misleading, and deceptive conduct

82.    Through its unfair acts and practices, Defendant has unlawfully obtained money from Plaintiffs and the class members. As such, Plaintiffs request

that this Court order Defendant to restore this money to Plaintiffs and all class members. Plaintiffs further seek an award of attorneys' fees and costs under Cal. Code Civ. Proc. § 1021.5.

83.    Plaintiffs and the class members also lack an adequate remedy at law for future harm and seek to enjoin Defendant from continuing to violate the UCL, and/or from violating the UCL in the future. Otherwise, Plaintiffs, the class members, and members of the general public may be irreparably harmed and/or denied an effective and complete remedy if such an order is not granted.

84.    **Permanent public injunctive relief.** Plaintiffs, acting as private attorney generals, also seek public injunctive relief to protect the general public from Defendant's conduct.

85.    Defendant's false advertising is ongoing and will continue to harm the public absent a permanent public injunction. Accordingly, Plaintiffs seek a permanent injunction to enjoin Defendant from engaging in the misconduct alleged herein.

### THIRD CLAIM FOR RELIEF
**Violation of California's False Advertising Law ("FAL")**

**Cal. Business & Professional Code § 17500 *et seq.***

**(By Plaintiffs, individually and on behalf of the California Class)**

86.    Plaintiffs incorporate by reference all allegations in this Complaint and restate them as if fully set forth herein.

87.    The FAL prohibits unfair, deceptive, untrue, or misleading advertising, including, but not limited to, false statements as to worth, value, and former price. Defendant's false advertising scheme misrepresents the existence of limited time sales violate the FAL.

88.    Furthermore, the FAL provides that: "No price shall be advertised as a former price of any advertised thing, unless the alleged former price was the prevailing market price as above defined within three months next immediately

preceding the publication of the advertisement or unless the date when the alleged former price did prevail is clearly, exactly and conspicuously stated in the advertisement." Cal. Bus. & Prof. Code § 17501.

89.    Defendant has falsely advertised former prices that were not true former prices and were not the prevailing market price in the three months immediately preceding the advertisement.

90.    Through its unfair acts and practices, Defendant has unlawfully obtained money from Plaintiffs and the class members. As such, Plaintiffs request that this Court order Defendant to restore this money to Plaintiffs and all class members. Plaintiffs further seek an award of attorneys' fees and costs under Cal. Code Civ. Proc. § 1021.5.

91.    Plaintiffs and the class members also lack an adequate remedy at law for future harm and seek to enjoin Defendant from continuing to violate the UCL, and/or from violating the UCL in the future. Otherwise, Plaintiffs, the class members, and members of the general public may be irreparably harmed and/or denied an effective and complete remedy if such an order is not granted.

92.    **Permanent public injunctive relief.**  Plaintiffs, acting as private attorney generals, also seek public injunctive relief to protect the general public from Defendant's conduct.

93.    Defendant's false advertising is ongoing and will continue to harm the public absent a permanent public injunction. Accordingly, Plaintiffs seek a permanent injunction to enjoin Defendant from engaging in the misconduct alleged herein.

### FOURTH CLAIM FOR RELIEF
**Violation of the California Consumers Legal Remedies Act ("CLRA") Cal. Civ. Code. § 1750 et seq.**

**(By Plaintiffs, individually and on behalf of the California Class)**

94.    Plaintiffs   incorporate   by   reference   all   allegations   in   this

Complaint and restate them as if fully set forth herein.

95.   Plaintiffs and the other class members are consumers within the meaning of Cal. Civ. Code § 1761(d) and have engaged in a transaction within the meaning of Cal. Civ. Code §§ 1761(e) and 1770.

96.   Defendant is a "person" within the meaning of Cal. Civ. Code §§ 1761(c) and 1770 and sells "goods or services" within the meaning of Cal. Civ. Code §§ 1761(b) and 1770.

97.   Defendant and its Products are a "good" or "service" within the meaning of Cal. Civ. Code. §§ 1761(a) and (b).

98.   Defendant has violated § 1770(a)(5) by representing that the Products had characteristics they did not have.

99.   Defendant has violated § 1770(a)(7) by misrepresenting that the Products are of a particular standard, quality or grade.

100.   Defendant has violated § 1770(a)(9) by advertising the Products with an intent not to sell them as advertised.

101.   Defendant has violated § 1770(a)(13)'s proscription against making false or misleading statements of fact concerning reasons for, existence of, or amounts of, price reductions.

102.   Plaintiffs and the other class members suffered actual damages as a direct and proximate result of Defendant's violation of the CLRA for conduct alleged herein.

103.   Plaintiffs and the class members demand judgment against Defendant for injunctive relief and attorneys' fees.

104.   **Permanent public injunctive relief.** Plaintiffs, acting as private attorney generals, also seek public injunctive relief to protect the general public from Defendant's conduct.

105.   Defendant's false advertising is ongoing and will continue to harm the public absent a permanent public injunction. Accordingly, Plaintiffs seek a

permanent injunction to enjoin Defendant from engaging in the misconduct alleged herein.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs, on behalf of themselves and on behalf of the proposed Classes, pray for relief and judgment against Defendant as follows:

A. Certifying the Classes pursuant to Rule 23 of the Federal Rules of Civil Procedure, appointing Plaintiffs as representatives of the Classes, and designating Plaintiffs' counsel as class counsel;

B. Awarding Plaintiffs and the class members compensatory damages and actual damages in an amount exceeding $5,000,000, to be determined by proof;

C. Awarding Plaintiffs and the class members appropriate relief, including actual and statutory damages;

D. For punitive damages;

E. For declaratory and equitable relief, including restitution and disgorgement;

F. For an order enjoining Defendant from continuing to engage in the wrongful acts and practices alleged herein;

G. Awarding Plaintiffs and the class members the costs of prosecuting this action, including expert witness fees;

H. Awarding Plaintiffs and the class members reasonable attorneys' fees and costs as allowable by law;

I. Awarding pre-judgment and post-judgment interest; and

J. Granting any other relief as this Court may deem just and proper.

# JURY TRIAL DEMANDED

Plaintiffs hereby demand a trial by jury on all issues so triable.

Respectfully submitted,

Dated: November 13, 2025

By: s/ *Raphael Janove*
     Raphael Janove

Raphael Janove (CA Bar No. 361193)
**JANOVE PLLC**
500 7th Ave., 8th Fl.
New York, NY 10018
(646) 347-3940
Email: raphael@janove.law

*Attorney for Plaintiffs and the Proposed Classes*